JUDGE PETERS
delivered the opinion oe the court.
This action was brought by appellee, a corporation created by an act of the Legislature of Kentucky, approved Feb. 16, 1866, entitled “ an act to incorporate the Kentucky and Colorado Gold and Silver Mining Company,” against appellant’s intestate, sued as a stockholder in said company for calls on unpaid stock subscribed by the intestate.
The law and facts were, by agreement of the parties, submitted to the judge of the Jefferson Court of Common Pleas, a jury having been dispensed with; and judgment having been rendered in favor of the plaintiff below, appellant now seeks a reversal.
The action was brought on a writing, signed by the intestate, of the following import: “We, the subscribers, agree to take the number of shares set opposite our names in the Kentucky and Colorado Gold and Silver Mining Company, organized under a charter from the General Assembly of the commonwealth of Kentucky. Capital stock of said company to be two hundred thousand dollars, divided into shares of one hundred dollars each.” And opposite to the name of the intestate one hundred shares are set down.
Appellant insists that the intestate did not become a stockholder in said company by signing said paper; that it can not maintain an action on it against his personal representative; that the writing only constitutes a contract between the signers thereof that each of them would take the number of shares in said company set opposite their names; and that if either of them failed in that, the others, or such of them as had complied, might sue the delinquent or delinquents for the breach; *638 and that the utmost the company could do in any event would be to forfeit the stock of the non-conforming subscribers.
The 5th section of the act incorporating' appellee (Session Acts, 1865-6, pages 555, 556) provides that said corporators, or any of them, may open books of subscription, and receive subscriptions to the capital stock of said company herein incorporated; and books of subscription may be opened and subscriptions received at such time and places, and upon such notices thereof, as any three of said incorporators may deem right and proper; and when forty thousand dollars are subscribed and paid in, shall call a meeting of the stockholders to elect directors, who shall hold office until the regular annual election.
Section 6 of said act provides that the stock shall be paid in such installments and at such times as the board of directors may require.
The charter does not require that there should be a promise or agreement in writing on the part of the subscribers to pay to the company the amount subscribed by them in stock. It authorized the corporators therein named to open books and receive subscriptions at such times and places and on such notices as any three of them should deem right and proper.
It is usual for subscriptions of stock to be made under a writing containing a stipulation that the subscribers are to pay the sums annexed to their names as they may be required by the president and directors of the company. But such a stipulation is not necessary under a charter like this, in which the terms of the contract between the company and the stockholders are created and defined by the act of incorporation itself.
In subscribing for stock it is only necessary that the writing should indicate an intention to become a stockholder and the number of shares that are taken by the subscriber.
The taking of stock in a corporation creates a contract, *639 express or implied, to pay for it in the mode prescribed by the charter. Such is the ruling of this court in Fry’s ex’r v. Lexington and Big Sandy Railroad Company, 2 Met-. 314.
That appellant’s intestate subscribed for one hundred shares of 'stock in said company is satisfactorily established by the evidence. It furthermore appears that he considered himself a stockholder, acted as such in the election of directors, made large payments on his stock; and that he was legally and properly a stockholder in the company can not be doubted. (Ibid)
It is in the next place insisted that the company was never properly organized, because there is no sufficient evidence that it has paid one hundred dollars into the treasury of this state, and obtained the certificate of the auditor of the payment, or if it ever, was made it was not done in proper time to give the corporation vitality.
By a proviso to the last section of the act of incorporation it is not to go into effect until the company shall have paid one hundred dollars into the treasury of this state, and obtained the certificate of the auditor of the payment.
The evidence of the payment is dispensed with by the admission of the fact, as shown by the bill of exceptions. And it- would have been a vain and useless thing to have paid the money into the treasury before the requisite amount of stock was subscribed, and other things preliminary to an organization.
By the proviso referred to the aet was not to go into effect until the one hundred dollars were paid into the treasury. No time was prescribed within which payment was to be made; but whenever it was made the act took effect, and the payment would retroact so as to effectuate and make valid all that had been previously done consistent with the act.
Besides, it was held by this court in Wight v. Shelby Railroad Company, 16 B. Mon. 5, that whether an incorporated *640 company was or not properly organized according to its charter is a question that can not be made collaterally, but must be made by a direct proceeding against the corporation. (5 Litt. 45; 9 B. Mon. 71.)
The objection therefore to the organization of the company must be disregarded. And for the same reason the objection to the company on account of the manner of opening the books for subscriptions must be unavailing.
Appellant, after in his answer denying that the company had ever legally adopted any by-laws for the management of its affairs, now insists that appellee had no power under its by-laws to make the call for which this action is thought. If the company had adopted no by-laws, then under the charter it had the power to make calls of payments for stock on the subscribers at such times as the directors should order. But, admitting that the by-laws were properly adopted, as contended for by appellant’s counsel in argument, still it does not appear that the call sued for was required by the order of the board of directors to be paid within one year after he had paid eighty per cent, of his stock. It is alleged in the petition that on the 17th of December, 1866, a call for the payment of five per cent, of the amount of stock subscribed was made, but when the payment was to be made is not stated; but it is alleged that appellant’s intestate was, notified of the call on the 20th of August, 1869, that payment was required t>. be made on the 20th of September following; so that the c-dí k not inconsistent with the by-laws nor the act of incorpoi 'Cos.
Finally, it is insisted that if the call was legal!, -mide, still the corporation can not enforce the payment thereof by ■ ;dgment for the money, but that the remedy is by a forfei,.or sale of the stock in the company; and in support of this j. >s< tion several Massachusetts cases are referred to as authoriv- . besides being in conflict with the doctrine as established by this court by several adjudications, and especially the case of *641 Fry’s executor v. Lexington and Big Sandy Railroad Company, supra. In Wight v. Shelby Railroad Company it is said that the decisions of the Massachusetts oases on the questions involved in that case, -which are similar to the one in this case, have not been followed by this court.
Appellee can have no legal existence out of the boundary of this state, the sovereignty which created it, and may enforce its lawful contracts in this state; but whether it-can exercise any power in Colorado depends upon tbe will of that sovereignty. (Phoenix Insurance Company v. The Commonwealth, 5 Bush, 68, and authorities cited.) But that question does not arise in this controversy.
As the judgment of tbe court below conforms to these views, tbe same must be affirmed.